UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY K. ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17-cv-02706-AGF |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Gregory Robinson is not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. For the reasons set forth below, Commissioner's decision is affirmed.

## BACKGROUND

The Court adopts the facts set forth in Plaintiff's Statement of Undisputed Material Facts (ECF No. 19) and Defendant's Statement of Additional Facts (ECF No. 24-2), which Plaintiff has not opposed. Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, born June 23, 1957, was most recently employed as a janitor until February 2011. Plaintiff received unemployment benefits and was actively seeking work

until May or early June of 2012, when he suffered a stroke. Plaintiff first applied for disability benefits June 14, 2012. That application was denied January 30, 2014. Plaintiff filed the present application April 17, 2014, alleging a disability beginning January 31, 2014,[1] due to kidney damage, seizures, chronic fatigue, hepatitis C, and high blood pressure. On June 4, 2014, Plaintiff's application was denied at the administrative level, and he thereafter requested a hearing before an Administrative Law Judge (ALJ). A hearing was held January 26, 2016. The ALJ heard testimony by Plaintiff, who was represented by counsel, and a vocational expert (VE). Supplemental hearings were held July 8 and August 31, 2016, adding further vocational testimony.

In short, Plaintiff has experienced seizures and memory loss since his stroke in 2012. Plaintiff was prescribed Keppra to control his seizures, but he continues to have them, particularly when non-compliant with his medication and lacking adequate sleep. Additionally, in 2014, a CT of the spine revealed a compression fracture from T4 to T6. Plaintiff also has hepatitis C, has high blood pressure, and smokes cigarettes. Plaintiff submitted a medical source statement from his nurse practitioner, Bryan Price, who had seen Plaintiff regularly since 2012. NP Price opined that Plaintiff was capable of low-stress work with the following limitations: sitting for two hours and standing for 30 minutes at a time; sitting for four hours and walking/standing for two hours in an 8-hour work day; one to two unscheduled breaks of 10-13 minutes; lifting 10 pounds frequently

---

[1] Plaintiff initially alleged an onset date of October 17, 2013, but later amended it to January 31, 2014, recognizing that the interim period was already adjudicated and excluded pursuant to the first denial of benefits dated January 30, 2014.

and 20 pounds occasionally; off-task 15% of the work day; avoid extreme temperatures and concentrated odors/fumes.

**Evidentiary Hearing and ALJ's Decision**

At the administrative hearing, Plaintiff testified that he could not drive due to his seizures and he had trouble remembering things due to his stroke, so he required written reminders and instructions. By decision dated September 14, 2016, the ALJ determined that Plaintiff had the severe impairments of hepatitis C, a history of thoracic compression fracture, seizures, and cerebral hemispheric dysfunction. The ALJ further determined that Plaintiff had the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. 404.1567(c), except that Plaintiff: (1) was unable to crawl or to climb ladders, ropes, and scaffolds; (2) must avoid exposure to unprotected heights, moving mechanical parts, and hazardous chemicals; and (3) was limited to occupations involving simple, routine tasks.

In support of this determination, the ALJ noted the following from Plaintiff's medical records. In February 2014, Plaintiff had a neurological consult that did not necessitate follow-up. In May 2014, Plaintiff was hospitalized after an unexplained trauma in his apartment, resulting in spinal fractures at T4-T6. Plaintiff was non-compliant with treatment and was discharged in stable condition. In June 2014, Plaintiff had a visit with his primary care physician and reported "doing well" and having "no complaints." Plaintiff declined assistance to quit smoking. In October 2014, it was noted that Plaintiff had stopped taking his blood-pressure medication. In December 2014, Plaintiff's hepatitis C was symptomatic.

In January 2015, Plaintiff had another seizure. It was noted that Plaintiff was non-compliant with medications for seizures and hypertension, and Plaintiff was not sleeping. In February 2015, Plaintiff saw a neurologist, gastroenterologist, primary care nurse practitioner, and psychiatrist. The neurology examination yielded normal results. Plaintiff was prescribed a 12-week course of medication for his hepatitis C. In March 2015, Plaintiff saw an ophthalmologist and refused glasses. Also that month, Plaintiff's neurology examination was normal. Plaintiff was instructed to take his medication, avoid sleep deprivation, and quit smoking. In early July 2015, Plaintiff had finished his 12-week hepatitis therapy. The following week, Plaintiff had another seizure after a period of sleep deprivation. In October 2015, Plaintiff visited the gastroenterologist and reported feeling stronger and healthier than he had in years. In November 2015, Plaintiff underwent successful radiation therapy for arteriovenous malformations. In early December 2015, Plaintiff's neurological examination was normal and he was clinically stable and performing well. Plaintiff had seizures later in December 2015 and January 2016. In February 2016, Plaintiff's primary care and neurology exams were normal. In March 2016, Plaintiff's records continued to reflect inconsistent adherence to seizure medication and sleep deprivation, but a neurological examination was normal. In June 2016, Plaintiff's neurological and physical examinations were normal and his blood pressure was not significantly elevated. Plaintiff failed to submit a function report despite prompting by the field office.

Viewing the whole record, the ALJ observed that Plaintiff "has not generally received the type of medical treatment [that] one would expect for a totally disabled

4

individual." Plaintiff's hepatitis was controlled. Plaintiff on numerous occasions did not specify any particular complaints. Notably, the ALJ observed that Plaintiff's "medical records are replete with instances of non-compliance" regarding his appointments, medications, and treatment, particularly with respect to his seizures and hypertension. The ALJ found that Plaintiff's failure to follow medical advice indicated that "he is not motivated fully to return to substantial gainful activity and is not accurately representing his level of functioning."

The ALJ gave little weight to NP Price's opinion because (1) a nurse practitioner is not considered an acceptable medical source and (2) NP Price's opinion was inconsistent with the medical evidence in the record. For example, NP Price identified no physical symptoms but issued an opinion imposing significant physical limitations, evidently relying heavily on Plaintiff's subjective complaints despite myriad reasons to question Plaintiff's credibility. The ALJ reasoned that the limitations designated in NP Price's opinion were not supported by any clinical or laboratory abnormalities or other objective information contained in the medical records. As such, the ALJ concluded that Plaintiff's medium RFC was supported by the absence of treatment suggesting total disability, successful available treatments for Plaintiff's existing symptoms, Plaintiff's non-compliance with available treatments, and "relatively benign objective findings in the record."

Finally, the ALJ found that Plaintiff could perform certain jobs listed in the Dictionary of Occupational Titles (DOT), such as dishwasher, linen room attendant, and laundry worker, which the VE testified a hypothetical person with Plaintiff's RFC and

vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled as defined under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which denied his request in September 2017. Thus Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. Plaintiff asserts that the ALJ erred by: (1) failing to give sufficient weight to NP Price's opinion, and (2) relying on vocational expert testimony that was inconsistent with DOT classifications.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments

listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a vocational expert (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome." *Id*. "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Id*. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh*

7

*v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court defers heavily to the findings and conclusions of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The Court "may not reverse the decision to deny benefits unless the record contains insufficient evidence to support the outcome." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

**Weight of the Medical Evidence**

First, Plaintiff asserts that the ALJ's RFC finding is erroneous in that the ALJ gave little weight to the only medical opinion in the record, provided by NP Price, and instead substituted her own interpretation of the underlying medical record. Defendant counters that the ALJ acted within her discretion in discounting NP Price's opinion because it was inconsistent with the medical evidence, including NP Price's own treatment notes and other records.

Under the rules in effect at the time of Plaintiff's application, a nurse practitioner was not considered an "acceptable medical source" but rather an "other medical source." *See* C.F.R. §416.913 (2013). Although both sources are evaluated using the same factors (e.g., nature and length of relationship, supportability, consistency (C.F.R. §404.1527)), "[i]n determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). Despite this, Plaintiff essentially argues that the ALJ was *required* to accept NP Price's opinion because it was

8

the only one submitted, notwithstanding the volume and substance of other medical evidence in the record. Plaintiff's position ignores established legal principles.

To be sure, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* Thus, even were NP Price considered an acceptable medical source whose opinion is "normally entitled to great weight," the Commissioner still "may assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). In other words, a "treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). "The regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." *Id*. at 921, citing 20 C.F.R. §404.1527(d)(2).

Though Plaintiff claims that the ALJ failed to justify her disregard for NP Price's opinion, to the contrary, the ALJ articulated good reasons. Specifically, she noted that NP Price's opinion was internally inconsistent insofar as his treatment records did not signal the physical limitations indicated in his opinion. She explained that NP Price's reports lacked "the type of significant clinical and laboratory abnormalities" suggesting disability. Additionally, the ALJ inferred that NP Price relied heavily on Plaintiff's subjective complaints, which she found unreliable given that Plaintiff "is not always

9

truthful" with his providers. This, too, is a proper consideration – an ALJ is entitled to give less weight to an opinion based largely on a claimant's subjective complaints rather than on the objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Similarly, an ALJ is entitled to discount subjective complaints where a claimant's credibility is undermined by non-compliance. *Chaney v. Colvin*, 812 F.3d at 677. A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Finally, by focusing solely on NP Price's opinion to the exclusion of other evidence, Plaintiff fails to appreciate that the ALJ simply found Plaintiff's voluminous medical records more probative than NP Price's opinion. ALJ may reject a medical opinion where it is inconsistent with the medical record as a whole. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Numerous medical records support the ALJ's assessment. For example, in October 2015, Plaintiff's gastroenterologist noted that Plaintiff was "feeling stronger and healthier than he has in years." In November 2015, Plaintiff "denied any acute issues of headache, nausea, vomiting, weakness, or seizure and said he had no concerns," and his neurological exam revealed normal functioning. In December 2015, Plaintiff's neurology notes stated that he was having memory problems but no seizures, nausea, headaches, arm or leg dysfunction. His neurological exam was normal and he was clinically stable and performing well. In February 2016, Plaintiff's mental and motor functions were normal. In June 2016, Plaintiff's physical and neurologic exams were normal and his blood pressure was not significantly elevated.

On the present record, the Court cannot say that the ALJ's RFC determination fell outside the available zone of choice. She did not, as Plaintiff claims, misinterpret the evidence or substitute her lay opinion for that of NP Price; she weighed the full record as a whole and concluded that NP Price's opinion was outweighed by other evidence. While Plaintiff might have remained susceptible to seizures (particularly when unmedicated and sleep-deprived), and while a claimant need not be bedridden to be found disabled (*Reed*, 399 F.3d at 923), this Court may not reverse merely because NP Price's opinion would have supported a different outcome. *Johnson v. Astrue*, 628 F.3d at 992. Mindful of this Court's standard of review, the Court finds the ALJ's assignment of weight reasonable on this particular record. It is the ALJ's task to resolve conflicts in the evidence. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Chaney*, 812 F.3d at 676.[2]

**Vocational Evidence**

Second, Plaintiff asserts that the ALJ's determination that Plaintiff could perform other work was erroneous because the vocational evidence was inconsistent with the ALJ's RFC finding. Specifically, though the ALJ determined that Plaintiff had the RFC to perform medium work limited to simple, routine tasks, the vocational expert cited jobs

---

[2] Even under the new rules recognizing nurse practitioners as acceptable medical sources (*see* C.F.R. §416.902(a)(7) (2018)), this Court would reach the same conclusion. The ALJ still may reject a medical opinion where it is inconsistent with the medical record as a whole (*Estes v. Barnhart*, 275 F.3d at 725) or where it relies more on a claimant's subjective complaints than on the objective medical evidence (*Kirby v. Astrue*, 500 F.3d at 709).

from the DOT requiring the ability to follow written or oral instructions. Plaintiff argues that the reasoning level required by the representative jobs (dishwasher (R2), linen room attendant (R3), and laundry worker (R2)) exceeds the RFC limitation for simple routine tasks. Plaintiff does not suggest that he actually lacks the reasoning capacity for these jobs – Plaintiff testified that he is able to do the things that his wife writes down for him. Rather, Plaintiff contends, as a technical matter, that the DOT classification of these jobs exceeds the ALJ's assigned RFC.

Plaintiff raised this issue after the first administrative hearing, and the ALJ heard additional vocational testimony. In her decision, the ALJ rejected Plaintiff's challenge, reasoning that the VE was experienced, uniquely qualified, and provided well-reasoned and relevant testimony. Plaintiff contends that this explanation is insufficient under Social Security Rule 00-4p, which requires an ALJ to explain how she resolved a conflict between VE evidence and DOT information. However, SSR 00-04p also accepts as a reasonable explanation that a VE is able to provide more specific information than the DOT, which only lists maximum requirements of occupations as generally performed. The Court finds the record sufficient to support the ALJ's finding in this regard. At the first hearing, the ALJ specifically asked the VE whether her interrogatory answers were consistent with the DOT. The VE answered in the affirmative, and Plaintiff's counsel declined cross-examination. At a subsequent hearing, the ALJ and counsel had a lengthy exchange with the VE regarding the level of skill and reasoning required for the representative jobs, including the following:

    ALJ:   With respect to the simple routine tasks, is that generally considered

to be unskilled work?

VE: Yes.

ALJ: Would there be any other restrictions with that kind of phrase – other, you know, simple routine tasks?

VE: No, that's typically, it's the definition of unskilled work.

…

Counsel: … Do you look at the steps involved in that, performing that job [referring to kitchen helper] when deciding if it falls underneath that hypothetical?

VE: I typically look, and also at the SVP level, I mean, and what type of work, what type of work it is. Because typically the SVP says a lot about the, defines a lot about the job as well, as far as someone's ability or how long it takes someone to learn that type of position.

…

Counsel: … You did not include jobs within that hypothetical, I would assume, that involve carrying out, like, the more detailed written and oral instructions?

VE: No, I didn't include any skilled work.

ALJ: Well, let me ask you, Ms. Larue, with respect to the three jobs you identified … so the dish washer, the linen room attendant, and the laundry worker, do any of those involve, like, for example, any kind of written or any extent of written requirement?

VE: No. Honestly, a lot of unskilled work is just short demonstration. Because that's what the work really entails. Really, I mean, more semi-skilled and things you may, you know, someone may have to go through, like a training manual or, you know, thing like that to under, if they're working on more in-depth things, but…

ALJ: But these three jobs that you've identified in particular…

VE: It's more of like a learn-by-example.

ALJ: Just watch and copy?

VE: Yeah. Yes.

ALJ: Does that help at all, counsel?

Counsel: Yeah. Thank you.

A "claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). "When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014). "The failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning does not require a remand." *Id*. This precedent defeats Plaintiff's argument on the present record.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 13th day of March, 2019.